# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

LAURA L. WALKER,           )
                           )
    Plaintiff,             )
                           )  Case No. 17-CV-345-JED-FHM
v.                         )
                           )
INVENTIV HEALTH, INC,      )
                           )
    Defendant.             )

## OPINION AND ORDER

**I.  Plaintiff's Allegations**

The plaintiff, Laura L. Walker, initiated this suit against the defendant, inVentiv Health, Inc. (inVentiv Health) in state court, asserting claims under the Americans with Disabilities Act (ADA) and the Family and Medical Leave Act (FMLA). InVentiv Health removed the case, asserting federal question jurisdiction under 28 U.S.C. § 1331.

According to Ms. Walker's petition, she was hired by inVentiv Health on October 13, 2014, to serve as a Neuroscience Specialty Representative. (Doc. 2-4). On July 16, 2015, she was hospitalized for a thyrotoxic crisis and she was diagnosed with hyperthyroidism, which caused muscle weakness, difficulty walking, exhaustion, insomnia, rapid heart rate and palpitations, unstable blood pressure, shortness of breath and several other problems. An endocrinologist subsequently diagnosed Ms. Walker with subacute autoimmune thyroiditis, requiring bedrest and anti-inflammatory medication. Ms. Walker promptly notified inVentiv Health of her serious medical condition.

Ms. Walker experienced severe abdominal pain that resulted in her emergency hospitalization four times over the week of August 9, 2015. She had planned to return to work on August 13, 2015, but was unable to as a result of the abdominal pain. She communicated with her

direct supervisor and inVentiv Health's Human Resources Manager about her inability to work on August 13. InVentiv Health responded by e-mail, informing her that her employment would be terminated if she did not return to work by August 17, 2015.

Ms. Walker underwent emergency exploratory surgery on August 14, 2015. From the hospital, she e-mailed her Human Resources manager, direct supervisor, and Cigna, which was inVentiv Health's third-party leave management contractor, to notify them that her medical condition and hospitalization rendered her temporarily unable to complete all of the required leave paperwork. Plaintiff alleges that inVentiv Health was "unwilling to grant Plaintiff's request regarding submission of the FMLA paperwork to be complete[d] by [her] physicians, and refused to waiver [sic] from the position [she] would be terminated if she did not return to work by August 17, 2015, with a release from her doctor. To no avail, Plaintiff urged Defendant for accommodation, explaining to Defendant that it would be impossible to meet such a demand." (Doc. 2-4 at ¶ 26). When she did not return to work on August 17, 2015, inVentiv Health sent Ms. Walker an e-mail terminating her employment.

Ms. Walker alleges that inVentiv Health discriminated against her on the basis of disability, in violation of the ADA (First Claim). She further contends that inVentiv Health violated the FMLA by interfering with her FMLA rights (Second Claim), refusing to reinstate her to her former position (Third Claim), and discharged her in retaliation for exercising her FMLA rights (Fourth Claim).

InVentiv Health moves to dismiss under Fed. R. Civ. P. 12(b)(2), (6) and 56 based on its arguments that the Court does not have personal jurisdiction and plaintiff's FMLA claims should be dismissed as she was not an employee for the required minimum amount of time (12 months) to qualify for FMLA benefits.

## II. Discussion

### A. Personal Jurisdiction

InVentiv Health asserts that the Court lacks personal jurisdiction over it. (Doc. 13 at 2). For a court to exercise personal jurisdiction over a nonresident defendant, the plaintiff must demonstrate the existence of facts satisfying both the forum's long-arm statute and the Due Process Clause of the United States Constitution. *See Niemi v. Lasshofer*, 770 F.3d 1331, 1348 (10th Cir. 2014). "Because Oklahoma's long-arm statute permits the exercise of any jurisdiction that is consistent with the United States Constitution, the personal jurisdiction inquiry under Oklahoma law collapses into the single due process inquiry." *Intercon, Inc. v. Bell Atl. Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000) (citing *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1416 (10th Cir. 1988)); *see Niemi*, 770 F.3d at 1348; *see also* 12 Okla. Stat. § 2004(F).

"In order to evaluate whether the exercise of personal jurisdiction comports with due process," the court "must first assess whether 'the defendant has such minimum contacts with the forum state that [it] should reasonably anticipate being haled into court there.'" *Niemi*, 770 F.3d at 1348 (quoting *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159-60 (10th Cir. 2010)). If a defendant has minimum contacts with the forum state, the court then determines "whether the exercise of personal jurisdiction over [that] defendant offends traditional notions of fair play and substantial justice." *Id.*

The minimum contacts standard may be satisfied by showing general or specific jurisdiction. *Id.* Specific jurisdiction exists "'if the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities.'" *Intercon*, 205 F.3d at 1247 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). When a plaintiff's claim does not arise directly from a defendant's

forum-related activities, the court may nonetheless maintain general personal jurisdiction over the defendant based on the defendant's contacts with the forum state. *See Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414–16 & n.9 (1984). "[D]ue process is not offended by a State's subjecting the corporation to its in personam jurisdiction when there are sufficient contacts between the State and the foreign corporation." *Id.* at 414. Thus, "[a] court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. __, __, 134 S. Ct. 746, 754 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. __, __, 131 S. Ct. 2846, 2851 (2011)). The inquiry "calls for an appraisal of a corporation's activities in their entirety," and a "corporation that operates in many places can scarcely be deemed at home in all of them." *Id.* at 762, n. 20.

Where the Court determines a motion to dismiss based on an alleged absence of personal jurisdiction without an evidentiary hearing, "the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." *See Old Republic Ins. Co. v. Continental Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017) (quoting *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999). In determining whether plaintiff has made a prima facie showing, all factual disputes are resolved in the plaintiff's favor. *Id.* (quoting *Benton v. Cameco Corp.*, 375 F.3d 1070, 1074 (10th Cir. 2004).

InVentiv Health argues that its subsidiary, inVentiv Commercial Services, LLC – not inVentiv Health – was plaintiff's employer and the Court does not have personal jurisdiction over the parent. However, the evidence regarding the employment relationship is conflicting. The defendant's documents refer to plaintiff as an employee of both entities. In support of its motion,

4

inVentiv Health submitted the Declaration of Michael Leahy, its Assistant General Counsel for Litigation and Employment. (Doc. 13-1). In his sworn affidavit, Mr. Leahy asserts the following:

> InVentiv Health is a parent company of inVentiv Commercial Services, LLC (inVentiv Commercial) and several other companies. InVentiv Health does not make employment decisions regarding inVentiv Commercial employees. Those decisions are made by inVentiv Commercial management and inVentiv Commercial human resources personnel. InVentiv Health provides inVentiv Commercial with certain shared administrative services, including leave of absence administration, and inVentiv Commercial is charged for those services.
>
> InVentiv Health is not registered to do business nor does it conduct business in the State of Oklahoma [and it] has no locations or employees in Oklahoma.
>
> Laura Walker was employed by inVentiv Commercial, not inVentiv Health . . . [which is] indicated both in her offer letter, termination letter, payroll, and numerous other documents.
>
> Plaintiff's daily communications were with inVentiv Commercial employees, except to the extent employees of inVentiv Health provided administrative services to inVentiv Commercial.

(*Id.* at ¶¶ 3, 4, 5, 6, 7).

Construed in plaintiff's favor, the documents submitted by inVentiv Health support plaintiff's position that inVentiv Health "purposefully directed [its] activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities," such that the exercise of specific personal jurisdiction is appropriate. *See Intercon*, 205 F.3d at 1247 (citation omitted). For example, the offer of employment was transmitted to Ms. Walker by letter on "inVentiv Health" letterhead. (Doc. 13-2). While the letter extends an offer of employment with inVentiv Commercial, it does so by repeatedly referencing inVentiv Health, and the letter indicates that Ms. Walker will also be an employee of inVentiv Health. For example, the letter states:

> It is my pleasure to extend to you an offer with inVentiv Commercial Services, LLC, one of the inVentiv Health, Inc. family of companies. . . .

5

Below is a list of the benefits you are eligible for as an employee of inVentiv Health:
. . .

Please be aware that this offer of employment is contingent upon the following:

- Successfully passing the Company's background investigation. . .

- Successfully passing a drug screening. Please watch for a second email... (If you have not received these emails within 12 hours of the receipt of your offer, please reach out to Human Resources Advisor, Jessica Homer at [redacted]@inVentivHealth.com).

- Due to the technical nature of this position and in order for you to gain in-depth knowledge, it will be necessary for you to successfully complete . . . training programs on the dates designated by inVentiv Commercial . . . You will also be required to attend formal training programs, which require overnight stay and may require double occupancy hotel accommodations at dates designated by inVentiv Health. . . .

While we are confident that we will have a mutually beneficial employment relationship, your employment with inVentiv Health is on an at-will basis. This means that both you and inVentiv Health can terminate the employment relationship at any time, for any reason, with or without notice. . . .

By signing this offer letter, you represent that you have reviewed and understand the letter, that you are not subject to any restrictions or covenants that would impede your performance of the duties and responsibilities of your position with inVentiv Health and that your employment with inVentiv Health will not violate or conflict with the terms of any employment, non-competition or other agreement with any previous employer or other entity.

Let me close by reaffirming our belief that the skill and background you bring to inVentiv Health will be instrumental to the future success of the Company. InVentiv Health believes that the single most important factor in our success has been our people. . . .

[signed] Jessica Waiculonis Manager, Human Resources

I accept inVentiv Health's offer of employment based on the terms and conditions described in this offer letter. [signature and date lines]

(*Id.*).

Other documents submitted by the plaintiff reflect that inVentiv Health treated inVentiv Commercial as one of "its four core business segments," which it also called "divisions." (Doc.

24-2). Moreover, the Court notes that the affidavit submitted by inVentiv Health indicates that inVentiv Health provides inVentiv Commercial with "certain shared administrative services, including leave of absence administration" (Doc. 13-1), and the plaintiff's statement of claims repeatedly refers to her requests for leave and her absences from work. In his affidavit, Mr. Leahy also acknowledges that Ms. Walker would have had communications with inVentiv Health in connection with such administrative services. (*Id.*). Evidence also reflects that inVentiv Health and inVentiv Commercial occupy the same address in New Jersey, and communications with plaintiff about her employment, and termination thereof, were by letterhead labeled "inVentiv Health," "inVentiv Health | commercial" and by email via "@inVentivHealth.com." (*See* Doc. 13-2, 13-3, 13-5).

Based on the evidence submitted and construing all factual disputes in plaintiff's favor, the Court determines that plaintiff has made a prima facie showing of personal jurisdiction sufficient to defeat inVentiv Health's dismissal motion. *See Old Republic Ins.*, 877 F.3d at 903. Accordingly, the motion to dismiss is **denied** to the extent it is based on personal jurisdiction. To the extent that inVentiv Health also seeks dismissal or summary judgment based upon its argument that it is the "wrong defendant" (*see* Doc. 13 at 5), such motion is **denied** for the same reasons. The defendant has not set forth undisputed facts or established the absence of a material factual dispute regarding its contention that inVentiv Health did not employ the plaintiff.[1]

---

[1] This Court's Local Rules require that a brief supporting summary judgment "begin with a section that contains a concise statement of material facts to which the moving party contends no genuine issue of fact exists. The facts shall be numbered and shall refer with particularity to those portions of the record upon which movant relies." N.D. Okla. LCvR 56.1. InVentiv Health's motion is not in the format of a Rule 56 summary judgment motion under the Local Rules.

### B. FMLA Claims

InVentiv Health argues that Walker's claims under the FMLA (plaintiff's Second, Third, and Fourth Claims in the petition) must be dismissed because the allegations of her pleading establish that she was not a covered individual under the FMLA. Ms. Walker's allegations establish that she was employed from October 13, 2014 until she was terminated on August 17, 2015. (Doc. 2-4 at ¶¶ 15, 30-31). Although she alleges in the petition that she was an "'eligible employee' as defined by 29 U.S.C. § 2611(4)" (Doc. 2-4 at ¶ 6), the timeline provided in her pleading establishes that she did *not* meet the definition of "eligible employee," which is set forth in 29 U.S.C. § 2611(2). The statute defines "eligible employee" as follows:

> The term "eligible employee" means an employee who has been employed –
>
> (i) for at least 12 months by the employer with respect to whom leave is requested under section 2612 of this title; and
>
> (ii) for at least 1,250 hours of service with such employer during the previous 12-month period.

29 U.S.C. § 2611(2)(A).

Because Ms. Walker was not employed by inVentiv Health for at least 12 months, she was not an "eligible employee" under the FMLA, and her FMLA claims fail. In her Second Claim, Ms. Walker alleges a violation of 29 U.S.C. § 2615(a)(1) for an alleged denial of "the FMLA benefits to which she was entitled." (Doc. 2-4 at ¶ 43). However, because she was not an eligible employee, she was not entitled to FMLA leave under § 2612(a) and there was no unlawful denial of such leave under § 2615. *See Depaula v. Easter Seals El Mirador*, 859 F.3d 957, 978 (10th Cir. 2017) (an FMLA interference claim requires a showing that the employee was entitled to FMLA leave). For the same reason, she was not entitled to be reinstated to her former position under 29 U.S.C. § 2614, as the plaintiff alleges in her Third Claim. Likewise, plaintiff cannot establish that

inVentiv Health retaliated against her for taking medical leave, as she alleges in her Fourth Claim, because she was not entitled to take FMLA leave and thus cannot show that "she engaged in a protected activity" under the FMLA. *See Dewitt v. Southwestern Bell Telephone Co.*, 845 F.3d 1299, 1318-19 (10th Cir. 2017).

The defendant's motion to dismiss plaintiff's FMLA claims pursuant to Fed. R. Civ. P. 12(b)(6) is **granted**. This case will proceed on the remaining claim in the plaintiff's petition.

### III. Conclusion

For the foregoing reasons, the defendant's motion to dismiss is **granted in part and denied in part** as set forth above.

SO ORDERED this 19th day of July, 2018.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE